**Deborah WIENER, Plaintiff,**

v.

**POLAROID CORPORATION, Samuel Yanes, and Harry Johnson, Defendants.**

**Civ. A. No. 89–2505–T.**

United States District Court, D. Massachusetts.

April 23, 1992.

Dean Richlin, Fitch, Wiley, Richlin & Tourse, Boston, Mass., for plaintiff.

Sandra L. Lynch, Foley, Hoag & Eliot, Boston, Mass., for defendants.

## MEMORANDUM

TAURO, Chief Judge.

Plaintiff, Deborah Wiener, brings this action against Polaroid Corporation for gender discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and state law, Mass.Gen.L. ch. 151B. Specifically, Wiener contends that Polaroid discriminated against her when it refused to hire her for a new environmental public relations position. In support, she claims that defendants indicated that "her personal style did not fit the defendants' notion of 'femininity.'" Amended Compl. ¶ 25. She further argues that she was subjected to sexual harassment.[1] Defendants move for partial summary judgment on the gender discrimination claim.

### I.

In deciding a motion for summary judgment, the district court "'must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir.1991) (quoting *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990)), *petition for cert. filed*, (U.S. Mar. 9, 1992). Accordingly, the alleged facts, construed in this light, are as follows.

In June 1987, Polaroid offered plaintiff a one year contract to work as a consultant in Cambridge, Massachusetts. In November 1987, Polaroid offered her a permanent position for a new environmental communications position, as yet to be created, located in Cambridge.[2] In February 1988, while plaintiff's hiring was being processed, she decided to leave Polaroid to relocate to Washington, where she planned to marry. She and defendant Samuel Yanes discussed the possibility of creating a position split between Cambridge and Washington.[3] Ac-

---

1. Wiener's claims of sexual harassment are based on two comments that defendant Harry Johnson, an employee at Polaroid, made to her. First, Johnson once allegedly commented on the fact that Wiener was not wearing a bra. Second, Johnson allegedly told Wiener about a fantasy that he had had involving a roomful of women's breasts.

2. Polaroid's position on this point is that, in late 1987, Yanes received approval to create a new environmental public relations position to be located in Cambridge. Yanes "hoped to hire plaintiff for the position if no internal candidates were identified through Polaroid's posting system, which gives current Polaroid employees preference in hiring decisions." Def.s' Statement of Material Facts at 3.

3. Plaintiff asserts that this idea of creating a split position was simply a "modification" of the original offer for an environmental affairs position. This contradicts her testimony, however, where she states that she "declined the prof-

cording to plaintiff, Yanes told her "to think about it for a week and get back to him and he said he would think about it for a week." Wiener Dep. at 125. She claims to have told Yanes, one week later, that she would like to accept the split position. *Id.* at 126. She "assumed" that, during the week, Yanes "would have an opportunity to find out if this was a go or a no-go." *Id.* at 136.

In March, 1988, according to plaintiff, Yanes informed her that the company would post her position, and that any interested Polaroid employee would have preference over her. In April, Polaroid's Chief Executive Officer, I.M. Booth, heard that Yanes was investigating the possibility of a split position, and he told Yanes that he would not authorize it. In May 1988, Yanes informed plaintiff that she would not be hired, and this suit ensued.

## II.

■ Defendants move for partial summary judgment on the issue of whether its decision not to hire plaintiff amounted to discrimination based on sex. To establish a prima facie case of discrimination in a failure to hire claim, plaintiff must show that (1) she is within a class protected by Title VII; (2) she applied and was qualified for the open position; (3) despite qualifications she was rejected; and (4) defendant filled the position, or continued its efforts to fill the position, with someone with plaintiff's qualifications.[4] *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 1094 n. 6, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Cumpiano*, 902 F.2d at 154–55.

erred [sic] position which was 'in the works.'" Pl.'s Answers to Def.s' First Set of Interrogs. No. 29.

**4.** In *Rossy v. Roche Products, Inc.*, 880 F.2d 621 (1st Cir.1989), the First Circuit required a plaintiff to show, as for the fourth element of her prima facie case, that "the position was filled by a person not within the protected class." *Id.* at 624. A subsequent decision, however, indicates that a plaintiff need not go so far. In *Cumpiano*

■ If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to articulate, not prove, a legitimate nondiscriminatory reason for the employee's rejection. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Mesnick*, 950 F.2d at 823; *Menard v. First Sec. Services Corp.*, 848 F.2d 281, 285 (1st Cir.1988). "If the defendant articulates lawful reasons for its action, the presumption created by the prima facie case is dissolved," *Menard*, 848 F.2d at 285, and the plaintiff then has the "burden to persuade the court that these reasons were a pretext for discrimination." *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 31 (1st Cir.1990).

### A. Prima Facie Case

■ Defendants argue that, even assuming a split position was offered,[5] plaintiff's prima facie case fails on the fourth prong because Polaroid never filled the split position after rejecting plaintiff. "If the plaintiff has failed to limn a prima facie case, the inference of discrimination never arises, and the employer's motion for summary judgment will be granted." *Mesnick*, 950 F.2d at 824.

The fourth prong of the *McDonnell Douglas* test requires the plaintiff to show "that the employer sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills." *Mesnick*, 950 F.2d at 823; *see also Cumpiano*, 902 F.2d at 155 (employee must show that employer had a continued need for someone to perform the same work); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 899 (1st Cir.1988) (same).

*v. Banco Santander Puerto Rico*, 902 F.2d 148 (1st Cir.1990), the court ruled that "in a case where an employee claims to have been discharged in violation of Title VII, she can make out the fourth element of her prima facie case without proving that her job was filled by a person not possessing the protected attribute." *Id.* at 155.

**5.** Defendants deny that they even offered a split position.

Polaroid contends that, after rejecting plaintiff, it did not continue to seek applicants for environmental public relations work as part of a split position. Furthermore, three weeks after it made its decision not to hire Wiener, Polaroid eliminated the environmental affairs position because of budget constraints. Defendants merged this opening with another, and hired a female employee.

In response, plaintiff asserts that this court cannot apply the traditional test for a prima facie case. She alleges that, here, "the position was being created especially for her, based on her past performance as a consultant." Pl.'s Opp. to Def.s' Mot. for Summ. J. at 5. She argues that it is, therefore, "irrelevant whether a position was open and whether it was ever offered to a person outside of the class." *Id.*

There is support in the case law for plaintiff's position. The Supreme Court recognized that, in a Title VII case, "the facts necessarily will vary" and the four prong test "is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 803 n. 13, 93 S.Ct. at 1824 n. 13. *See also Burdine*, 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6 (*McDonnell Douglas* standard "is not inflexible"). In *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), the Court stressed that the *McDonnell Douglas* analysis is neither "rigid" nor "mechanized" and that the central inquiry is always whether an employer treats an employee less favorably than other employees for an impermissible reason. *Id.* at 577, 98 S.Ct. at 2949–50. *See also Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093 (primary focus is whether plaintiff can prove "that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination"); *Cumpiano*, 902 F.2d at 155 ("[T]he critical determination in any Title VII suit is whether the complainant has proven by a fair preponderance of the evidence that an impermissible consideration—say, her gender—was a substantial motivating factor in the adverse employment decision.").

Courts have, therefore, tailored the *McDonnell Douglas* test so as to require, for the fourth prong, that plaintiff show that the employer's decision "occurred under circumstances giving rise to an inference" of discrimination. *Pena v. Brattleboro Retreat*, 702 F.2d 322, 324 (2d Cir. 1983) (age discrimination case). *See also Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 33 (1st Cir.1990) ("The fourth prong would require [plaintiff] to show that [s]he was not hired but for [her] gender."); *Oxman v. WLS–TV*, 846 F.2d 448, 455 (7th Cir.1988) (for the fourth prong, plaintiff can show "that others not in the protected class were treated more favorably"); *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1557 (11th Cir.1987) (the fourth prong is "altered" to require employee to produce evidence that employer intended to discriminate in deciding to discharge employee); *Holmes v. Bevilacqua*, 794 F.2d 142, 146 (4th Cir.1986) (plaintiff can establish a prima facie case by presenting "some evidence that race was the determining factor in the employer's decision").

Plaintiff says that she has presented evidence which gives rise to an inference that Polaroid refused to hire her because of her gender. She claims that defendants Yanes and Johnson treated her in ways that they did not treat male counterparts. Pl.'s Statement of Disputed Facts at 9 ¶ V. She claims that, on one occasion, Johnson called a meeting and expected plaintiff to do a presentation without prior notice. When she objected to this treatment in private, he called her a "little girl" and said that she needed to be controlled. *Id.* She further claims that defendants assailed her for being "too strong," "immature," and "controlling," and accused her of engaging in "little girl behavior." *Id.* At a lunch meeting, Johnson warned plaintiff that she was too outspoken and assertive and that that would not play well at Polaroid. *Id.*

■ As a general matter, "[t]he burden of making out a prima facie case is 'not onerous.'" *Mesnick*, 950 F.2d at 823 (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094); *see also Villanueva v.*

*Wellesley College*, 930 F.2d 124, 127 (1st Cir.) (the prima facie showing is "quite easy to meet"), *cert. denied*, —— U.S. ——, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991). Given this liberal standard, the court finds that plaintiff has established a prima facie case of sex discrimination.

### B. *Legitimate Business Reason*

■ Defendants state that economics, and not gender, governed their decision not to hire plaintiff for a split position. Polaroid views the creation of a split position to be highly unusual, Booth Dep. at 12–13, and it requires the approval of the CEO, I.M. Booth. McLean Aff. ¶ 9. In this case, Booth refused to authorize the split position because it was not economically efficient and because Polaroid's environmental needs were based in Massachusetts. Booth Dep. at 10. Plaintiff admits she has no reason to think Booth discriminated against her because she was a woman. Wiener Dep. at 138. Booth claims that he thought well of her and supported her candidacy for a Cambridge-based position. Booth Dep. at 23–24.[6]

Once the defendant articulates a valid non-discriminatory reason for refusing to hire the plaintiff, "the effects of the prima facie case are dispelled," and "the plaintiff has the burden of proving, by a preponderance of the evidence, that defendant's articulated reason was pretextual, and that the real reason" for defendant's refusal to hire was discrimination. *Menard*, 848 F.2d at 287.[7]

Plaintiff claims that Yanes needed no authority from Booth to create a split position, and that this rationale is mere pretext for discrimination. She asserts that Yanes, who was tiring of plaintiff's assertive conduct, went to Booth "expecting that Booth would question the economics of the situa-

tion." Pl.'s Opp. to Def.s' Mot. for Summ. J. at 8. In support she states that

> [i]t had always been my observation that if Sam wanted to work out a deal, Sam worked out a deal, and he had a great deal of freedom and mobility in doing so and, in fact, Sam portrayed the whole discussion with me around a split job as this was his decision to make and he had the ability to do so.

Wiener Dep. at 137. She claims that Yanes "never mentioned that further approval" would be necessary. Wiener Aff. ¶ 2. Plaintiff further asserts that Yanes did not generate or receive a needs or cost assessment for the split location, Pl.'s Statement of Facts at 8, and that this is further evidence that economics was not the real issue.

As to the first point, plaintiff's argument is no more than mere conjecture or speculation. She has no evidence, other than her own opinion, that Yanes could create a split position without authority from Booth. Booth rebuts the second point (regarding the absence of a cost assessment) by saying that it is "pretty self-evident that [a split position] would be a lot more expensive than having her work out of Boston." Booth Dep. at 13. In addition, plaintiff's unsupported assertion as to this second point contradicts the testimony of both Yanes and Johnson that they attempted to calculate the extra costs of a split position. *See* Yanes Dep. at 2–39; Johnson Dep. at 2–71–72.

■ Plaintiff has no affirmative evidence to establish that Polaroid's asserted reasons are pretextual. In defending against a Motion for Summary Judgment, the non-moving party cannot rest on "conclusory allegations, improbable inferences and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8–9 (1st Cir.1990). Rather, the

---

**6.** To further support their position that they were not motivated by plaintiff's sex in refusing to hire her, defendants show that the Corporate Communications Division was and is predominantly female. Wiener Dep. at 3–140. In February 1988, the three Division managers reporting directly to Yanes were all female. Wiener Dep. at 155–156.

**7.** On the degree of proof required at this stage, see *Mesnick*, 950 F.2d at 823–24 n. 5 (indicating that a plaintiff's burden of demonstrating pretext is tied to the strength of the employer's proffered reason).

plaintiff must "'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: ... discrimination.'" *Mesnick*, 950 F.2d at 824 (quoting *Medina–Munoz*, 896 F.2d at 9). As the First Circuit has reiterated, "evidence contesting the factual underpinnings of the reason for the discharge proferred by the employer is insufficient, without more, to present a jury question." *Dea v. Look*, 810 F.2d 12, 15 (1st Cir.1987). *See also Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 255 (1st Cir.1986).

### III.

The court finds that plaintiff has not produced any significantly probative evidence that Polaroid's stated reason for its action masked a discriminatory animus based on plaintiff's sex. Accordingly, summary judgment in favor of defendants on the gender discrimination claims [8] is ALLOWED.

An order will issue.

---

**8.** The Supreme Judicial Court analyzes 151B claims pursuant to the burdens set forth in *McDonnell Douglas. See Wheelock College v. Massachusetts Com. against Discrimination,* 355 N.E.2d 309, 313 n. 5, 371 Mass. 130, 135 n. 5 (1976). Summary judgment is, therefore, appropriate on the state claim, as well.