**Thomas B. CONNELL,
Plaintiff, Appellant,**

v.

**BANK OF BOSTON and John S.
Ingalls, Defendants, Appellees.**

**No. 90–1160.**

United States Court of Appeals,
First Circuit.

Heard June 8, 1990.
Decided Jan. 28, 1991.

Edward M. Perry with whom Perkins, Smith & Cohen, Boston, Mass., were on brief, for plaintiff, appellant.

Scott C. Moriearty with whom Marianne Meacham and Bingham, Dana & Gould, Boston, Mass., were on brief, for defendants, appellees.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and TORRES,* District Judge.

* Of the District of Rhode Island, sitting by designation.

LEVIN H. CAMPBELL, Circuit Judge.

This is an appeal in an age discrimination case by plaintiff-appellant Thomas B. Connell from a summary judgment in favor of plaintiff's employer the Bank of Boston, and John S. Ingalls, the bank official who discharged plaintiff.

The complaint had five counts: Count I alleged that plaintiff was discharged effective June 30, 1986, because of his age in violation of 29 U.S.C. § 623; Mass.Gen.L. ch. 149, § 24A, and Mass.Gen.L. ch. 151B; Count II alleged discrimination based on retaliation; Count III alleged willful age discrimination in violation of 29 U.S.C. § 626(d)[1] (1976); Count IV alleged breach of implied contract for fringe and pension benefits; and Count V alleged the intentional infliction of emotional distress.

The district court found that "the plaintiff has not presented evidence which would permit a jury to conclude that the abolition of his job flowed from other than legitimate business considerations." It therefore granted summary judgment on Counts I, II and III. It dismissed Counts IV and V on the basis of "persuasive authority." No appeal has been taken from the dismissal of Counts IV and V.

## STANDARD OF REVIEW

### A. *Summary Judgment Generally*

Fed.R.Civ.P. 56(c) is the starting point. It provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The words "genuine issue of material fact" have been judicially refined and defined:

> By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will

---

[1]. The reference to (d) appears to be a mistake; 29 U.S.C. § 626(d) has to do with filing charges with the EEOC.

not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). This teaching was reiterated in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 322, 106 S.Ct. at 2552. *See also Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5 (1st Cir.1990); *Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1106 (1st Cir.1989).

## B. *Summary Judgment In An ADEA Case*

■ In the absence of direct evidence of age discrimination, as is the case here, an ADEA plaintiff in a discharge case must clear two hurdles. He must first produce evidence establishing a *prima facie* case. This hurdle has several requirements. Plaintiff must show:

1. He was within the protected age group, that is 40–70 years of age; [2]

2. He was performing his job at a level that met his employer's legitimate expectation; and

3. He was replaced by someone with roughly similar qualifications.

*Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8–9 (1st Cir.1990); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1011 (1st Cir. 1979).

■ If a *prima facie* case is made, the burden shifts to the employer to articulate some legitimate nondiscriminatory reason for plaintiff's discharge. The articulation of such a reason nullifies the inference raised by the *prima facie* case. *See Medina–Munoz*, 896 F.2d at 9; *Menard v. First Sec. Services Corp.*, 848 F.2d 281, 285 (1st Cir.1988). Plaintiff must then clear the second hurdle by showing that the employer's articulated reasons were only a pretext for age discrimination. The plaintiff is required to "do more than simply refute or cast doubt," on the employer's rationale. He must "also show a discriminatory animus based on age." [3] *Medina–Munoz*, 896 F.2d at 9. The key question becomes whether the employer fired plaintiff because of his age. *Id.* We do not second-guess the business decisions of an employer. *Rossy v. Roche Products, Inc.*, 880 F.2d 621, 625 (1st Cir.1989).

With these principles as our guide, we now turn to the facts, viewing them in the light most favorable to the plaintiff, the party opposing the motion, and indulging all inferences favorable to him. *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988).

## THE FACTS

### A. *Prima Facie Case*

Plaintiff was forty-seven years old when he was discharged by the Bank. This puts him within the age category covered by the

---

**2.** When *Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104 (1st Cir.1989) was decided, the protected class was defined as those individuals who are at least 40 years of age but less than 70 years of age. The maximum age limitation of 70 was removed in the Age Discrimination in Employment Amendments of 1986, Pub.L. No. 99–592 (Oct. 31, 1986), effective Jan. 1, 1987.

**3.** We do not suggest that the plaintiff must, necessarily, offer affirmative evidence of age animus in addition to rebutting the employer's evidence. Rather, the evidence as a whole, whether direct or indirect, must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by age animus.

ADEA. 29 U.S.C. § 631(a). He thus has met the first requirement for a *prima facie* case.

■ We turn to the next requirement, that he was performing his job at a level that met the Bank's legitimate expectations. Plaintiff started working for the Bank in 1963 as a teller in the Branch Division. He remained in this division for fourteen years, serving as head note teller at the Kenmore Square branch for seven years and teller-in-charge at the South Boston branch for more than two years. His job evaluations during his time as a teller can fairly be described as fair to good. There is no indication that he was considered an outstanding employee. We need not go into the details of plaintiff's work evaluations during his time as teller because it is the appraisals of his work in the Municipal Finance Unit of the Public Finance Division, where he was employed when he was discharged, that are pertinent.

In 1977 plaintiff was transferred, presumably at his own request because of better promotion opportunities, to the Municipal Finance Unit. He became an officer of the Bank in 1978 and an assistant vice-president in 1982. His performance as an officer was rated as competent. The officers' job performances were rated in accord with a scale: 1 (Unsatisfactory); 2 (Fair); 3 (Competent); 4 (Commendable); and 5 (Distinguished). In an Officer Performance Appraisal dated November 2, 1981, he received an overall performance rating of 3 (Competent). This was followed by an Officer Performance Appraisal dated November 23, 1982, of 4—. The next Officer Performance Appraisal, dated November 28, 1983, gave him an overall performance rating of 3+. He received the same score on the appraisal of November 2, 1984. Plaintiff received a 3 rating in the next appraisal dated September 11, 1985. This is the last job evaluation appraisal in the record.[4] Viewing the facts in the light most favorable to plaintiff, we find that he has met the second requirement for a *prima facie* case: he was performing at a level that met the Bank's legitimate expectations; he was never rated less than a competent bank officer.

■ The final requirement for making a *prima facie* case is that he was replaced by someone with qualifications similar to his own. This is perhaps arguable, since the Municipal Finance Unit in which plaintiff served was disbanded. However, plaintiff presented evidence that after the date of plaintiff's termination, June 30, 1986, two people, both younger than plaintiff, were hired and placed in the Public Merchant Banking Unit which ostensibly took on the functions of the Municipal Finance Unit. Viewing the record most favorably to plaintiff, we believe he sufficiently established the third prong of a *prima facie* case.[5] The Bank, in any event, as described below, countered by articulating a legitimate non-discriminatory reason for his discharge. By so doing, the Bank nullified any discriminatory inference raised by the *prima facie* case and left as the sole dispositive question, the following: Has plaintiff raised a genuine factual issue concerning whether the Bank's articulated reason was but a pretext for age discrimination?

**B. The Bank's Articulated Reasons for Plaintiff's Discharge**

■ On February 3, 1986, John S. Ingalls, age 36, was appointed managing director of the Public Finance Division of the Bank. Shortly after Ingalls took command, Carol Stevens Eno, the manager of the Municipal Finance Unit in which plaintiff worked, recommended to Ingalls that the unit be abolished because of its failure

---

4. We realize that plaintiff disagreed with many of his ratings and some negative written comments in the job performance appraisals. It is not our function, however, to evaluate the job appraisals where there is no evidence that they were motivated or slanted by age animus.

5. In cases involving force reductions, this court has suggested that, as an alternative to showing replacement by a similarly qualified person, a plaintiff may establish a *prima facie* case by showing "the employer did not treat age neutrally or that younger persons were retained in the same position." *Hebert v. Mohawk Rubber Co.,* 872 F.2d 1104, 1111 (1st Cir.1989).

to show a profit and its discouraging prospects. Two new laws reduced the unit's major sources of revenue: Mass.Gen.L. ch. 44, § 55B prohibited municipalities from depositing funds in non-interest bearing accounts; and the 1986 Federal Tax Reform Act imposed substantial new restrictions on the issuance of general obligation bonds.

In his affidavit and deposition, Ingalls gave two principal reasons for plaintiff's discharge. After receiving Eno's recommendation, Ingalls eliminated the Municipal Finance Unit and set up a new one, the Municipal Financial Advisory Sources Unit. He also made other organizational changes. Five municipal account officers were involved in the elimination of the unit in which plaintiff worked: Kelvin Brooks, Allan Totsi, Gerald Mecca, Stephen Knight and the plaintiff. Ingalls compared the relative performance of each and found Connell to be the weakest. Plaintiff disputes this, but the performance ratings bear Ingalls out except as to Mecca, who had the same rating as plaintiff but more favorable comments. Ingalls also knew that Eno did not have a favorable view of plaintiff's work. Plaintiff had disagreed with Eno's latest appraisal of his work and refused to agree to the goals Eno had established for him. Eno informed plaintiff that he should rethink his position and agree to the goals or resign. She wrote a memo to Ingalls on March 28, 1986 informing him of the situation, stating *inter alia,* "it is very important that you back me up."

Ingalls believed that plaintiff had mishandled two important municipal accounts, one for the town of Northbridge and the other for the city of Lynn. In his affidavit, Ingalls stated that in March of 1986: "I was advised by the Treasurer for the City of Lynn, Bob McManus, that if Connell was returned to the City's account, the City would no longer use the Bank as its financial advisor."

For these reasons Ingalls decided to discharge plaintiff and transfer the four other officers to different positions in the Bank. Brooks was assigned to the Public Merchant Banking Unit, Totsi and Mecca went to the newly formed Municipal Financial Advisory Services Unit, and Knight was transferred to the newly formed Government Banking Unit. As noted, all of these employees were younger than plaintiff. Another employee in the eliminated unit, John Nicolosi, age 32, was discharged. Eno, who was also younger than plaintiff, left the Bank's employ in September 1986 after helping with the transition and reorganization ordered by Ingalls. It is not clear from the record whether Eno left of her own volition or was discharged. We also note that Ingalls and the Bank parted company in June of 1988.

In his affidavit, Ingalls stated that no one replaced plaintiff as a municipal account officer and that no one was hired to replace either Nicolosi or Eno. Ingalls was emphatic in both his deposition and affidavit that plaintiff's age was not a factor in his discharge.

Thus, the Bank articulates two related reasons for plaintiff's discharge: the reorganization of the Bank resulting in the elimination of the unit in which plaintiff worked and plaintiff's poor performance relative to his peers, particularly in regard to his work as a municipal account officer.

### C. *Plaintiff's Rebuttal Evidence*

#### 1. *Plaintiff's Performance*

In rebuttal to the statements in Ingalls' affidavit that plaintiff had mishandled two important municipal accounts,—for the town of Northbridge and the city of Lynn—and that the treasurer of Lynn had told Ingalls that it would not do business with the Bank anymore if plaintiff handled Lynn's account, plaintiff submitted two affidavits. Robert McManus, treasurer of Lynn stated:

1. I am the Treasurer of the City of Lynn.

2. While I have been Treasurer of the City of Lynn, the City of Lynn has had an account with the Bank of Boston as well as other banks.

3. I did not ever tell Mr. Ingalls, or any other Bank of Boston employee, that if Mr. Connell was assigned to the City of Lynn's account, I would move the

account to another bank and I believe it is very unlikely that anyone would make that statement.

The Treasurer–Collector of the town of Northbridge, Cecelia C. Parker, stated in her affidavit:

1. I am the Collector of the Town of Northbridge, Massachusetts, and in 1985, I was the Treasurer–Collector of the Town of Northbridge.

2. In 1985, I retained the Bank of Boston to handle municipal bond issues because of Mr. Tom Connell.

3. As Treasurer–Collector of the Town of Northbridge, I would have been aware of any problems the Town had with the Bank of Boston, and in particular Thomas Connell's handling of the Town's financing.

4. Tom Connell always did a commendable job while working on the Town of Northbridge's finances.

5. Tom Connell had nothing to do with the delay of the town of Northbridge's municipal bond issue at the end of 1985.

There are also two letters in the record, one from the town treasurer of Wilmington and the other from the Bristol County Treasurer thanking plaintiff for services he rendered and commending him for his work.

### 2. *Reorganization*

It is undisputed that changes in federal and state laws had made the Municipal Finance Unit unprofitable and that a reorganization occurred pursuant to which the unit was eliminated. Furthermore, at least one other individual besides Connell (Nicolosi, age 32) lost his job as a result of the reorganization. No evidence exists that another Bank officer was created or hired to replace plaintiff. Rather the remaining officers who were not fired seem to have split up plaintiff's work, with staff help. To be sure, while the Municipal Finance Unit was eliminated, most of its functions were carried on and all of the original five officers except plaintiff were retained in one or another capacity. In his deposition, Ingalls testified, "[we] did not cease to perform any particular function as a result of the reorganization." This is not a situation where, as Eno had recommended, the unit and the functions it performed were entirely eliminated. Still, plaintiff's ratings were below all the others except Mecca, and Mecca had more favorable comments than plaintiff.

### 3. *Age Animus*

Besides rebutting an employer's proffered reasons for firing a plaintiff, the evidence must ultimately be sufficient to permit the factfinder reasonably to infer that plaintiff was fired because of his age.[6] Proof along these lines need not be of the "smoking gun" variety and, in some factual settings, the mere showing of the falsity of the employer's stated reasons may, along with the other facts and circumstances in the case, give rise to a reasonable inference of age discrimination. But this is not a matter that can be addressed by formula. For a plaintiff to prevail on his ultimate burden, the totality of the circumstances must in each case create a reasonable inference that the employer's stated reasons were *a pretext for unlawful [age] discrimination. Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The inference of intentional age discrimination must rest on more than speculation and conjecture. *See Dea v. Look,* 810 F.2d 12, 17 (1st Cir.1987) (holding the plaintiff could not survive summary judgment merely by presenting his own version of the reasons behind the employment decision).

In order to make such a showing here, plaintiff points to the Bank's exploration, consideration and ultimate rejection of an early retirement program for its employees. The exploration of an early retirement program started at about the same time that two consulting firms, McKinsey

---

**6.** As the Supreme Court noted in *Texas Dept. of Community Affairs v. Burdine,* "[t]his burden [of production] now merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

& Company and Booz–Allen & Hamilton, were hired to study the Bank's organizational and management structure with an eye to reducing costs and increasing productivity. We do not see how the Bank's mere consideration of an early retirement program, followed by its eventual rejection, is itself proof of age animus vis a vis plaintiff. Nor do the management studies on productivity and cost reduction, without more, prove age animus. However, in support of his contention that the reorganization was motivated by age animus, plaintiff also offers the affidavits of two bank officials.

John B. Ellington, a vice-president who worked in the Bank's Employment Relations/Human Resources Office, stated in an affidavit:

1. From June, 1979 through January, 1987, I was an Assistant Vice President/Vice President of the Bank of Boston working in the Employment Relations/Human Resources Office.

2. During the period from 1984 through 1986, as part of my responsibilities in the Human Resources area, I tracked employees being terminated by the Bank of Boston.

3. Between 1984 and 1986, the Bank of Boston terminated at least 95 employees, more than 75% of whom were over 40 years of age.

4. During 1982 through 1986, I am aware that the Bank of Boston was studying early retirement proposals in order to enable people who were with the Bank of Boston for a considerable length of time to retire early.

5. The Bank of Boston never adopted any early retirement program to my knowledge, but many individuals who would have been covered by such a program were separated as a result of reorganizations.

Ellington's deposition testimony indicated that, in 1984 and 1985, the Bank was looking to see "if there were ways we could accomplish the same work with fewer people." The Bank was overstaffed and had higher salary costs and more people than other similar organizations. A reorganiza-

tion plan was, therefore, put into effect. Many employees were terminated due to the reorganization of the Bank. Of the 80 to 100 employees that Ellington knew were to be discharged, he believed that there were more between the ages of 45 to 50 than below.

Curtis G. Browne, an officer at the bank, stated in an affidavit:

1. I have personal knowledge of the facts set forth herein.

2. I worked for the Bank of Boston for thirty-three (33) years from 1954 through 1987, and became a Corporate Service Officer, one of the more senior Bank employees.

3. In about 1982, I began to hear that the Bank management wanted to revitalize the Bank.

4. Shortly thereafter, consultants from McKinsey & Company, Inc. and/or Booz–Allen visited divisions of the Bank and spoke with many of the employees of the Bank.

5. Also beginning in about 1982, I began hearing about early retirement programs that were being developed and considered by the Bank.

6. By 1984 and 1985, I knew that early retirement proposals were being considered and that various options being considered covered different age groups.

7. I know that while I was employed by the Bank none of the early retirement proposals were ever adopted and that the Bank determined to eliminate more of the senior employees through other methods of reduction in force.

8. Beginning in about 1984, the Bank began to reorganize a number of departments within many of the divisions of the Bank and, with each reorganization, I was aware that some older Bank employees were being terminated.

9. I know that the more senior Bank employees were frequently terminated in the "reorganizations" and there were fewer "old timers" in the Bank by the time I retired.

As noted, the plaintiff bears the burden of proving that the Bank intended to discriminate against plaintiff because of his

age. Since intent is a "pure question of fact," *Pullman–Standard v. Swint,* 456 U.S. 273, 287–88, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982), the issue we must consider is "whether the plaintiff could prevail if a jury or judge believed plaintiff's version of the facts and disbelieved defendant's version." *Stepanischen v. Merchants Dispatch Transportation Corp.,* 722 F.2d 922, 928 (1st Cir.1983).

Applying this standard, we agree with the district court that plaintiff's evidence is not sufficient to permit an inference of age discrimination. Although plaintiff's evidence concerning the municipal accounts may be sufficient to rebut the Bank's assertion that he was dismissed due to his poor performance on those particular accounts, he has not offered any evidence to show that the bank's other reason, his relatively lackluster performance evaluations, was pretextual. Moreover, even if plaintiff's evidence were sufficient to rebut the bank's stated reasons for his dismissal, the evidence overall has to be sufficient for a factfinder reasonably to infer that the Bank's actions were motivated by age animus. We do not think that the plaintiff has met that burden here.

Plaintiff relies principally on the affidavits of Ellington and Browne in order to show age animus. Affiant Ellington states that "between 1984 and 1986, the Bank of Boston terminated at least 95 employees, more than 75% of whom were over 40 years old." Standing alone, this statement could constitute significant evidence of age animus. However, the Bank submitted an affidavit from the Director of the Bank's Human Resources Information Systems (the "Lauer affidavit"), stating that between 1984–86, over 900 Bank employees were terminated of whom less than 17% were over 40. Connell has not disputed the accuracy of the Bank's figures nor has he explained how the admittedly incomplete sample discussed in the Ellington affidavit is statistically relevant.

The Lauer affidavit does not indicate the percentage of employees over 40 in the full-time workforce at the Bank. Thus, it does not establish that the Bank did not terminate older employees at a disproportionate rate. The Bank, however, does not bear the burden of proving that it did not discriminate. Rather, Connell must prove that it did. By demonstrating that the sample in the Ellington affidavit represents only a small subset of the total number of employees terminated, the Lauer affidavit casts substantial doubt on the relevance of the Ellington sample—a point which Connell has made no effort the explain. Consequently, we agree with the district court that the probative value of the Ellington affidavit must be discounted.

Unlike the Ellington and Lauer affidavits, the Browne affidavit offers no statistical information concerning the termination of older employees. Rather, Browne simply states that the Bank had been considering an early retirement program, that no such program had been adopted, that some older employees were terminated through reorganizations, and that there were fewer "old timers" in the bank when he retired. Perhaps the strongest indication of age animus would be Browne's stated opinion that "the Bank determined to eliminate more of the senior employees through other methods of reduction in force." (Emphasis supplied.) However, nowhere does Browne point to facts buttressing this broad assertion or explaining how Browne learned of the Bank's intentions to eliminate seniors. Browne himself is described simply as "a Corporate Service officer, one of the more senior Bank Employees." It is not indicated that he participated in meetings where Bank employment policies were made, that his responsibilities included making such policies, or that he had overheard the remarks of officers having such responsibilities. Nothing in his affidavit indicates the basis for his having discovered that "the Bank determined to eliminate more of the senior employees through other methods of reduction in force." Without a foundation to indicate the basis for Browne's information, we doubt the admissibility of such a generalization about the

Bank's intentions [7] and therefore the appropriateness of considering the Brown affidavit on summary judgment.[8]

Our role, of course, is not that of factfinder—we are not to weigh the evidence or make credibility judgments. Moreover, we are required to view the evidence in the light most favorable to the plaintiff. Our task, more simply stated than accomplished, is to review the record before us to determine whether a genuine issue of material fact exists for trial. However, as we held in *De Arteaga v. Pall Ultrafine Filtration Corp.*, 862 F.2d 940, 941 (1st Cir. 1988), "the question is not whether there is literally no evidence favoring the nonmovant, but whether there is any upon which a jury could properly proceed to find a verdict in that party's favor." Had plaintiff offered evidence of the statistical relevance of the Ellington sample, the conflicting affidavits might have been sufficient to create a genuine issue of material fact. Without more, plaintiff's affidavits provide at best a small sample of employment data, without any showing of the statistical relevance of the sample, and a series of vague statements and conjectures. We, therefore, hold that the plaintiff has not made a showing sufficient to survive summary judgment with respect to his age discrimination claim.

## THE RETALIATION CLAIM

■ The facts plaintiff relies on for his retaliation count, which come from his own deposition and affidavit, are as follows. On May 30, 1986, Ingalls called plaintiff at home, while plaintiff was on vacation, and told him about the reorganization plans. When plaintiff inquired as to where he fit in to the new scheme of things, Ingalls responded that he did not fit in and that Toby Danforth, a bank official, would tell him what was going to happen on Friday (the next day). Danforth contacted plaintiff the next day and told him that he should go back to work on Monday and work until the 30th of June. Plaintiff was also told that as long as his work was up to date, he could use his office until June 30 for contacting prospective employers.

On June 2, plaintiff retained counsel. On June 11, he hand-delivered to Danforth a letter from his attorney stating that plaintiff intended to protect his rights regarding his termination. Immediately after delivering the letter, plaintiff was allegedly told by Danforth that because he had contacted a lawyer, "All bets are off." On June 13, Ingalls called plaintiff into his office and said, "Don't get lawyers involved. Let some-one else pay the lawyers. You don't need a lawyer." On the afternoon of the same day, Ingalls ordered plaintiff to vacate his office and told him that he would have no further access to any office in the Bank. According to plaintiff, the reason Ingalls gave for evicting him from his office two weeks prior to the promised date of June 30 was:

You're very popular with municipalities out there and with other banks, and peo-

---

7. Fed.R.Evid. 701 provides:

   If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

   The plaintiff has offered no information as to the specific observations upon which Browne's opinions are based. Neither are the opinions, as expressed in the affidavit, "helpful to ... the determination of a fact in issue." Rather, the affidavit simply states Browne's opinion as to the ultimate issue, a determination which, as a lay witness, Browne is no more prepared to make than the trier of fact. *See Mitroff v. Xomox Corp.*, 797 F.2d 271 (6th Cir.1986) (rejecting the opinion of a manager as to the exist-

   ence of age discrimination and explaining that "seldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' ..."). 797 F.2d at 276.

8. Fed.R.Civ.P. 56, relative to summary judgment, provides that:

   "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters therein." Fed.R.Civ.P. 56(e).

   The Browne affidavit thus fails on two counts: it does not set forth statements that would be admissible nor does it establish Browne's competence to testify to those statements.

ple respect you and we don't want to lose any of our clients, and I feel I'd like to have you out of your office so we can put somebody else in there and get on with the workings of the department.[9]

Plaintiff's severance pay and other benefits were computed as of June 30. His pension had vested prior to the notification on May 31 that he would be discharged effective June 30. The only detriment to plaintiff as a result of the Bank's sudden eviction of him from its premises was the loss of the use of his office for a period of two weeks to contact prospective employers.

The retaliation provision of the ADEA provides in pertinent part:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... had made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter. 29 U.S.C. § 623(d).

■ In order to establish a prima facie case of retaliation, plaintiff must show that: he engaged in conduct protected by the act; he was subjected to an adverse employment action at the time or after the protected conduct occurred; and there was a causal link between the protected conduct and the adverse employment action. *Wentz v. Maryland Cas. Co.*, 869 F.2d 1153, 1154–55 (8th Cir.1989); *see also Oliver v. Digital Equipment Corp.*, 846 F.2d at 110–111; *Rowlett v. Anheuser–Busch, Inc.*, 832 F.2d 194, 202 (1st Cir.1987).

■ It is self-evident that by retaining an attorney plaintiff had engaged in an activity protected under the Act. *See Grant v. Hazelett Strip–Casting Corp.*, 880 F.2d 1564, 1569 (2d Cir.1989); *Byers v. Follmer Trucking Co.*, 763 F.2d 599, 601–02 (3d Cir.1985). And although the plaintiff's status at the time of the retaliatory action was that of an employee about to be terminated, he was protected under the Act. *See Rutherford v. American Bank of Commerce*, 565 F.2d 1162, 1165 (10th Cir.1977) (employee has retaliatory claim against bank even though she voluntarily terminated her employment three months prior to retaliatory action which resulted in her not obtaining another job); *Wolf v. J.I. Case Co.*, 617 F.Supp. 858, 868 (D.C.Wis. 1985) (retaliation need not have occurred prior to plaintiff's termination).

The only question is whether the Bank's action, which was retaliatory, comes within the scope of the statute. Did it constitute "discrimination" against the plaintiff, or to put it another way, was it an adverse employment action? We think not.

Most cases involving a retaliation claim are based on an employment action which has an adverse impact on the employee, i.e., discharge, demotion, or failure to promote. Here it had been irrevocably decided that plaintiff would be discharged on June 30. He was discharged two weeks prior to that time but was paid in full to June 30, and all of his severance benefits were computed as of that date. Plaintiff has not alleged that he was damaged in any way by the Bank's action.

We have found one case almost directly on point. In *Miller v. Aluminum Co. of America*, 679 F.Supp. 495 (W.D.Pa.), *aff'd without opinion*, 856 F.2d 184 (3d Cir. 1988), plaintiff was informed in September that she would be discharged for poor performance at the end of December. In October she filed a complaint with the EEOC alleging sexual discrimination. On November 7, she was told not to report for work anymore. She received full employment benefits as if she had worked to her scheduled termination date. *Id.* at 504. The court held that because plaintiff received her full benefits to the date of the original termination date there was no adverse employment action. *Id.* at 505.

In *Yates v. Avco*, 819 F.2d 630, 638 (6th Cir.1987), a case relied on by the *Miller* court, it was held that a temporary demotion without reduction in pay or benefits

---

**9.** This statement contradicts Ingalls' affidavit testimony that one of the reasons for dis-

charging plaintiff was his poor performance as a municipal finance officer.

did not ground a retaliation claim under the ADEA. The only other case we have found in the general target area is *Passer v. American Chemical Soc.*, 701 F.Supp. 1 (D.D.C.1988). It held that the cancellation of a symposium honoring plaintiff was not retaliation as intended by the ADEA. *Id.* at 3.

We hold that although the Bank's peremptory discharge of plaintiff two weeks prior to the notified date could be found to be retaliatory, it was not an adverse employment action within the meaning or intent of 29 U.S.C. § 623(d).

## SUMMARY

We affirm the summary judgment for defendants on Count I (discrimination claim) and Count II (retaliation claim); we remand to the district court with instructions to dismiss Count III because it is without statutory authority, and its allegations are subsumed in Count I. The dismissal of Counts IV and V have not been appealed.

Costs awarded to appellee.

TORRES, District Judge (concurring).

I concur in Judge Campbell's conclusion that the district court's entry of summary judgment in favor of the defendant should be affirmed. However, I reach that result for different reasons that I think are important to express.

I agree that, in an employment [age] discrimination case, merely rebutting the employer's proffered reason for its adverse decision does not necessarily entitle an employee to a judgment. As Judge Campbell has said, in order for an employee to prevail, "the evidence must ultimately be sufficient to permit the fact-finder reasonably to infer that the plaintiff was fired because of his age." Op. at 1175. In my opinion, that is an accurate restatement of the Supreme Court's requirement that an employee must prove the proffered reason to be a pretext *for discrimination. Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Under *Burdine*, success in demonstrating that the proffered reason is not the real reason for the employer's action establishes its pretextual nature and raises an inference of a discriminatory purpose. In many cases, that may be sufficient for the employee to prevail. However, in some cases it may not because the pretext may be cloaking a *non* discriminatory purpose that the employer wishes to conceal. For example, an employer who fires a 41 year old employee, stating that the employee is unqualified, would not be guilty of age discrimination if the real reason was a desire to create a job for an unemployed relative.

Consequently, although I recognize that proof of pretext will often warrant a finding of intent to discriminate, I agree that an employee bears the ultimate burden of proving *both* that the employer's stated reason is pretextual *and* that it masks a discriminatory motive. However, I am troubled by the statement that, at the summary judgment stage, "even if plaintiff's evidence were sufficient to rebut the bank's stated reasons for his dismissal, the evidence overall has to be sufficient for a factfinder reasonably to infer that the Bank's actions were motivated by age animus." Op. at 1177. If "to rebut" simply means to present evidence tending to disprove the *validity* or *soundness* of the stated reason, I agree that the employee must do more. The employee must also present evidence that the employer was motivated by a discriminatory purpose. *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir.1990). That may be accomplished indirectly by adducing facts indicating that the proffered reason was not the real basis for the employer's action. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. On the other hand, if "to rebut" means to present evidence that the employer was not genuinely motivated by its articulated reason, I do not believe that anything more is required.

As Judge Campbell has indicated, under the burden-shifting formula established by *Burdine*, the employer's articulation of a nondiscriminatory reason "nullifies the inference raised by the *prima facie* case."

Op. at 1172. Therefore, unless rebutted, the articulated reason is sufficient to carry the day for the employer because "[w]e do not second-guess the business decisions of an employer." Op. at 1172. Alternatively, if the employee demonstrates that the proffered reason is pretextual, the *prima facie* case is reinstated and its inference of a discriminatory purpose may be considered along with any contrary evidence in determining whether the employer was motivated by an intent to discriminate. Otherwise, the employer's mere articulation of a patently specious nondiscriminatory reason, even if transparently disingenuous, would return the employee to the untenable position of having to prove discriminatory intent only by "smoking gun" evidence which is precisely what *Burdine* sought to avoid.

Whether an employee has presented sufficient evidence to support a reasonable inference that the proffered reason is pretextual may be properly determined at the summary judgment stage. In making that determination, it must be borne in mind that the employee is required to do more than simply dispute the articulated reason or question its wisdom. *Medina–Munoz,* 896 F.2d at 9: *Menard v. First Sec. Services Corp.,* 848 F.2d 281, 285 (1st Cir.1988). As previously noted, it is not enough for the employee to challenge, or even disprove, the *validity* or *soundness* of the stated reason. The employee must present evidence warranting a finding that the employer was not genuinely motivated by that reason or that it was motivated by a discriminatory animus. Although employment discrimination cases often require some assessment of how well an employee is discharging his/her duties or the business considerations confronting an employer, they should not be converted into trials to determine the level of an employee's job performance or the sagacity of an employer's business judgments. Thus, the relevant inquiry is not whether the articulated reason is factually correct but whether it really prompted the employer's action.

On the other hand, if the evidence is sufficient to support a finding of pretext, I believe that the additional question as to whether the inference of discrimination arising from the reinstated *prima facie* case outweighs whatever contrary evidence may exist is a quintessential question of fact that must be decided at trial unless there is uncontradicted evidence that the employer was really motivated by some other nondiscriminatory reason. In this case, no other such reason has been cited. The Bank has consistently maintained that Connell was terminated because of the reorganization and his job performance relative to those who were retained. Therefore, the issue is not whether the stated reason was a pretext *for discrimination.* Rather, it is whether Connell has presented sufficient evidence to support an inference that the reason was a *pretext.* In my judgment, he has not.

It is undisputed that changes in federal and state laws made the Municipal Finance Unit unprofitable and that a reorganization occurred pursuant to which the unit was eliminated. Furthermore, Connell was not replaced. Rather, his job was eliminated as a result of the reorganization and those of his duties that continued to be performed were assumed by some of the remaining four officers in his unit who were transferred to other departments. Nor has Connell presented any evidence rebutting the Bank's contention that he was discharged because Ingalls considered him less qualified than the other officers in his unit. As Judge Campbell has noted, Connell's performance ratings were consistently below those of all but one of the other officers, and Connell's immediate supervisor had communicated an unfavorable view of his performance to Ingalls.

Connell's argument that he was *satisfactorily* performing his job is inapposite. There is nothing to suggest that the reorganization was fictitious. On the contrary, it is undisputed that at least one other younger individual (i.e. Nicolosi) lost his job as a result of that reorganization. Consequently, the question is not whether Connell was doing *satisfactory* work. Instead, the question is whether his performance was equal or superior to that of the other four officers who were retained. Since the record does not support an inference that it

was, Connell has failed to present a genuine issue of fact regarding the allegedly pretextual nature of the Bank's proffered reason. Accordingly, I concur in the conclusion expressed by Judge Campbell that the district court's judgment should be affirmed.

BOWNES, Senior Circuit Judge (dissenting and concurring).

I dissent from the affirmance of the summary judgment on the age discrimination claim (Count I) and concur in the affirmance of the summary judgment on the retaliation claim (Count II).

My reason for dissenting on the age discrimination claim is that the majority has applied the wrong legal standard. At page 1175 of the opinion, it is stated: "Besides rebutting the employer's proffered reasons for firing a plaintiff, the evidence must ultimately be sufficient to permit the factfinder reasonably to infer that the plaintiff was fired because of his age." The majority later concludes on page 1177: "Moreover, even if plaintiff's evidence were sufficient to rebut the bank's stated reasons for his dismissal, the evidence overall has to be sufficient for a factfinder reasonably to infer that the Bank's actions were motivated by age animus."

The requirement that a plaintiff rebut an employer's articulated reasons and also directly prove age discrimination is contrary to the express teaching of the Supreme Court. All that is necessary to raise a genuine issue of material fact in an employment discrimination case is that the plaintiff make out a prima facie case and successfully rebut as pretextual the employer's articulated reasons for the adverse action. As I shall demonstrate in more detail later, there can be little doubt that the plaintiff here has met this two-step test. That is all a plaintiff has to do to have a trier of fact consider his claim. There is no requirement that the plaintiff also prove that "the Bank's actions were motivated by age animus." I acknowledge that the majority has followed First Circuit precedent, but I believe that our precedent is contrary to the explicit teaching of *Texas*

*Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A review of the relevant Supreme Court cases is in order.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is, of course, the seminal case on the order and allocation of proof in an employment discrimination case. The plaintiff carries the initial burden of establishing a prima facie case. If this is done, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802, 93 S.Ct. at 1824. If the articulation is made, plaintiff "must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a [racially] discriminatory decision." *Id.* at 805, 93 S.Ct. at 1826.

In *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), the Court explained the shifting burden as follows:

A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. *See Teamsters v. United States, supra* [431 U.S. 324], at 358 n. 44 [97 S.Ct. 1843, 1866 n. 44, 52 L.Ed.2d 396 (1977)]. And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race.

*Id.* at 577, 98 S.Ct. at 2949–50 (emphasis in original).

In *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, the Court, speaking through Justice Powell,

the same Justice who had written *McDonnell Douglas*, further amplified and explained the *McDonnell* shifting burden. The Court reiterated the three *McDonnell* steps in an employment discrimination case, *id.* at 252–54, 101 S.Ct. at 1093–94 and then concluded its burden-shifting exposition by the statement that requires the elimination of the additional proof imposed by the majority on the plaintiff.

> The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer *or indirectly by showing that the employer's proffered explanation is unworthy of credence.* See *McDonnell Douglas*, 411 U.S., at 804–805 [93 S.Ct. at 1825].

*Id.* at 256, 101 S.Ct. at 1095 (emphasis added). Neither the opinion of my brother Campbell nor that of Judge Torres' concurrence comes to grips with the alternative language of *Burdine*. They dance all around it, or simply ignore it.

The last case bearing directly on the issue is *United States Postal Serv. Bd. of Govs. v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). In *Aikens*, the Court added some gloss to *Burdine*:

> Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff." *Burdine, supra* [450 U.S.], at 253 [101 S.Ct. at 1093].

*Id.* at 715, 103 S.Ct. at 1482. Justice Blackmun's concurrence restated the pertinent rule:

> While the Court is correct that the ultimate determination of factual liability in discrimination cases should be no different from that in other types of civil suits, *ante,* at 716 [103 S.Ct. at 1482], *the McDonnell Douglas framework requires that a plaintiff prevail when at the third stage of a Title VII trial he demonstrates that the legitimate, non-discriminatory reason for the employment decision is in fact not the true reason for the employment decision.*

*Id.* at 718, 103 S.Ct. at 1483 (emphasis added). As I read the Supreme Court cases, especially *Burdine*, a plaintiff may prove employment discrimination *either* by direct evidence of discrimination *or* by successfully rebutting the employer's articulated reasons. For some reason this circuit requires a plaintiff to meet three requirements, not two, to forestall summary judgment. In addition to making out a prima facie case, a plaintiff has the burden not only of proving that the articulated reasons of the employer were pretextual but also of adducing additional evidence of age discrimination:

> We have often discussed the interplay between the *Burdine* burden-shifting framework for proving age discrimination and the imperatives of Rule 56. *See, e.g., Menzel [v. Western Auto Supply Co.]*, 848 F.2d [327] at 328–30 [1st Cir. 1988]; *Menard*, 848 F.2d at 284–85; *Dea*, 810 F.2d at 14–16. Generally speaking, the principles discussed above abide at the summary judgment stage. Most pertinent for our purposes, it remains true that when, as here, the employer has articulated a presumptively legitimate reason for discharging an employee, the latter must elucidate specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive: age discrimination. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986) (summary judgment opponent who bears burden of proof on an issue must reliably demonstrate existence of genuine dispute as to material facts); *Garside [v. Osco Drug, Inc.]*, 895 F.2d [46] at 48 [1st Cir.1990] (similar); Fed.R.Civ.P. 56(e).

*Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir.1990). Our rule violates the explicit alternative method of proof as stated in *Burdine.*

At least nine circuits have held that the *Burdine* alternative language means that making out a prima facie case *plus* proving that the articulated reason for the discharge was pretextual is sufficient, without more, to raise a genuine issue of fact as to discrimination. *See Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 464–5 (2d Cir.1989) (summary judgment for employer reversed: "A showing that a proffered justification is pretextual is itself sufficient to support an inference that the employer intentionally discriminated."); *Fite v. First Tennessee Production Credit Ass'n,* 861 F.2d 884, 890–91 (6th Cir.1988) (employer's motion for directed verdict properly denied because jury could have found that employer's reason for discharge was a mere pretext); *Samarzia v. Clark County,* 859 F.2d 88, 91–92 (9th Cir.1988) (directed verdict properly denied; a reasonable jury could have concluded that employer's reasons were pretextual); *Overgard v. Cambridge Book Co.,* 858 F.2d 371, 375–76 (7th Cir.1988) (plaintiff may prevail in one of two ways: either by directly proving that employer was more likely motivated by a discriminatory reason or by indirectly demonstrating that defendant's proffered reason for the termination is not credible. "If the plaintiff can convince the trier of fact that the defendant did not act for the reason it offers as justification, then the defendant has not met its burden and the plaintiff may thus prevail."); *MacDissi v. Valmont Industries, Inc.,* 856 F.2d 1054, 1057–59 (8th Cir.1988) ("As a matter of both common sense and federal law, an employer's submission of a discredited explanation for firing a member of a protected class is itself evidence which may persuade the finder of fact that such unlawful discrimination actually occurred."); *Carden v. Westinghouse Elec. Corp.,* 850 F.2d 996, 1000 (3d Cir.1988) ("A showing that a proffered justification is pretextual is itself equivalent to finding that the employer intentionally discriminated"); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1562–64 (11th Cir.1987) (summary judgment for employer reversed; employee raised a genuine issue of material fact as to whether employer's articulated reason for discharge was pretextual); *Thornbrough v. Columbus and Greenville R.R. Co.,* 760 F.2d 633, 646 (5th Cir.1985) ("In the context of a summary judgment proceeding, the question is not whether the plaintiff proves pretext but rather whether the plaintiff raises a genuine issue of fact regarding pretext."); *Krodel v. Young,* 748 F.2d 701, 707–78 (D.C.Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985) (At very least *Burdine* and *Aikens* "make clear that an ADEA plaintiff who has established a prima facie case and has effectively discredited the employer's proffered justification need not, in all cases, submit additional evidence concerning the particular employment decision at issue in order to demonstrate that age was a determining factor in the employer's action.").

The Fourth Circuit seems to follow the "additional" evidence test: "If the presumption is rebutted, the burden of production returns to the plaintiff to show that the defendant's proffered nondiscriminatory reasons are pretextual *and* that the employment decision was based on a sexually-discriminatory criterion." *Spencer v. General Elec. Co.,* 894 F.2d 651, 659 (4th Cir.1990) (emphasis added). *Spencer,* however, was decided after trial, not on summary judgment. Hence, the plaintiff was given the opportunity to prove his case at trial, an option denied under the rule followed in our circuit. Our circuit seems to be the only one that puts an extra burden of proof on the plaintiff for avoiding summary judgment. It must be noted that neither of my brothers refer to a single circuit case outside of this circuit.

I now turn to an assessment of how the facts fit into the framework of the burden-shifting analysis. The majority finds two reasons for plaintiff's discharge: "the reorganization of the bank resulting in the elimination of the unit in which plaintiff worked and plaintiff's poor performance relative to his peers, particularly in regard

to his work as a municipal account officer." Op. at 1174–1175. I agree with the statement of the first reason, but I think it more accurate to split the second statement in two. I would find three articulated reasons: bank reorganization, plaintiff's poor performance relative to his peers, *and* that plaintiff had mishandled two important municipal accounts.

I first consider the "reorganization" reason. Although not expressly so finding, the majority's analysis of the reorganization facts, Op. at 1175, effectively demonstrates that this reason had nothing to do with plaintiff's discharge. The elimination of the unit in which he had worked was accomplished by transferring virtually every employee, except plaintiff, to a new or pre-existing work unit. In fact, there was no reorganization, except as to plaintiff.

I have no quarrel with the majority's exposition of plaintiff's rebuttal of the "mishandling of municipal accounts" reason. Op. at 1174–1175. I do not know what more the plaintiff could have done to rebut this alleged flaw in his work. Not only did he submit specific affidavits of the municipal officers in charge of the alleged mishandled accounts stating their approval of plaintiff's performance, but the same bank official who had charged him with mishandling the municipal accounts also told plaintiff, after he had been discharged, that he was very popular with municipalities and other banks. Yet for some reason my brothers refrain from specifically finding that plaintiff successfully rebutted the municipal-accounts-mismanagement reason.

On the only proffered reason not rebutted conclusively, however, the majority finds that plaintiff "has not offered any evidence to show that the bank's other reason, his relatively lack-luster performance evaluations was pretextual." Op. at 1176. I pass for the moment the question whether rebutting two out of three articulated reasons ought to be sufficient to surmount a summary judgment hurdle and focus on the performance evaluations. The phrase "lackluster performance evaluations" paints with too broad a stroke. The facts show that the bank evaluated plaintiff as a competent employee. Plaintiff started with the bank as a teller, then became a head note teller at a branch bank and finished his teller career as teller-in-charge at the South Boston branch. His performance appraisals ranged from fair to good.

Plaintiff was promoted to be an officer of the bank in 1978. We can fairly infer that the bank felt his performance as teller warranted this promotion. His performance evaluations as an officer varied from competent to commendable. He never received an unsatisfactory or fair rating. Although plaintiff's evaluations did not mark him for the higher echelons of the bank, there is nothing in his employment record to suggest that he was not doing his work competently. It can be fairly argued that the job performance evaluation reason was, like the other two reasons, pretextual.

I disagree with the majority's analysis of the Ellington and Browne affidavits because I do not think my colleagues viewed them in the light most favorable to plaintiff. These affidavits are, however, beside the point; they should not enter the summary judgment mix. Under the law as set forth in *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095, plaintiff is entitled to have his claim of age discrimination determined by a trier of fact. He has successfully rebutted two of the three reasons for his discharge articulated by the Bank and raised a question of fact as to the third. This is sufficient, without more, to ground a finding that the bank discriminated against plaintiff because of his age.

I respectfully dissent.