USCA1 Opinion

 

 March 10, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1989 CANDELARIA CUELLO-SUAREZ, ET AL., Plaintiffs, Appellees, v. PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA), Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Stahl, Circuit Judge, _____________ Aldrich and Coffin, Senior Circuit Judges. _____________________ ____________________ Karen M. Loyola Peralta for appellant. _______________________ A. Santiago Villalonga for appellees. ______________________ ____________________ March 10, 1993 ____________________ COFFIN, Senior Circuit Judge. Plaintiff, a United States _____________________ citizen who was born in the Dominican Republic, claims that she was denied promotion on many occasions because of her national origin. She brought suit against her employer, the Puerto Rico Electric Power Authority (PREPA), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-(2), and Law 100 of June 30, 1959 of the Commonwealth of Puerto Rico, P.R. Laws Ann. tit. 29, 146.1 After a bench trial, the district court gave judgment for the plaintiff and PREPA appeals. We affirm. PREPA now challenges the court's holding that plaintiff made out a prima facie case and its allegedly improper shifting of the burden of proof. Although the trial lasted four days, appellant did not provide us with a transcript, as required by Fed. R. App. P. 10(b)(2). We have since obtained it,2 have reviewed it to check our understanding of the evidence, but rely principally on the facts as set forth by the district court, which in turn relied on the post-trial briefs of counsel. Plaintiff, a seventeen-year veteran employee of PREPA, has held various positions as clerk and typist. She possesses a B.A. degree in business administration with a major in accounting and a minor in management and, shortly after commencement of this litigation, obtained her license as a Certified Public ____________________ 1 She also asserted a claim under 42 U.S.C. 1981 that was dismissed by the district court and is not a part of this appeal. 2 The transcript, filed in the district court on October 13, 1992, was sent to us at our request on February 18, 1993. Accountant. Over the years, she successfully had taken at least ten different tests required for promotion and always had received above average evaluations in her performance reviews as a temporary employee. She never received a reprimand. Prior to this lawsuit, plaintiff had filed 77 applications for promotion to supervisory positions, with no success.3 Subsequent to the filing of this action in 1988, she applied for the position of Supervisor of Consumer Services. The position was filled by a native Puerto Rican with seven months of employment by PREPA and a B.S. degree in marine biology. Statistical data of various kinds were introduced at trial. Of some 10,700 employees in PREPA, 100 were in executive positions and 2,400 in managerial positions. All employees in the former group were born in either Puerto Rico or other parts of the United States; in the latter group, there were five persons of Dominican origin occupying what the court characterized as "highly technical" supervisory positions in the field. There were six other CPA's in PREPA. All were born in ____________________ 3 This figure is used by the district court. In her testimony, plaintiff listed 92 separate applications between 1980 and 1989. PREPA's regulations governing appointment to managerial level positions state: The interested supervisor selects the one that he/she considers to be the best candidate in accordance to the effective norms and in accordance to the following priority order: ... a) Regular and temporary managerial employees with one or more years of service with the authority. b) Non-Regular employees. c) Candidates from the Registry of Eligibles. -3- Puerto Rico and held jobs ranging from Executive Director to Auditor. The district court began its legal analysis by rejecting PREPA's contention that plaintiff's evidence had to be assessed under disparate impact principles -- i.e., as proof that a facially neutral practice had a significant discriminatory impact on applicants for promotion who were of Dominican origin as compared with applicants of U.S. (including Puerto Rico) origin. PREPA argues that the court erred in that ruling, claiming that plaintiff challenged a specific, facially neutral practice, i.e., "grooming" allegedly less qualified persons by placing them temporarily in desirable positions and then ultimately appointing them permanently based on their temporary experience. PREPA further argues that plaintiff failed to sustain this challenge because she relied on statistical data, compiled by herself, that provided no comparison with the relevant pool of eligibles, as required by Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 650- ______________________ ______ 52 (1989). There is some surface plausibility to this argument but on reflection we reject it. While a practice of hiring or promotion allowing considerable room for subjective judgment can be subject to disparate impact analysis, Watson v. Ft. Worth Bank & Trust, ______ _______________________ 487 U.S. 977, 990 (1988), "grooming" was merely one of the justifications advanced by PREPA for its actions. The gist of plaintiff's claim was that, try as hard as she might, she was always turned down in favor of U.S.-Puerto Rico born persons -- -4- for varying and pretextual reasons having nothing to do with her performance or qualifications. It was the discriminatorily motivated treatment of her that she sought to demonstrate by her data, which did not purport to be a broad statistical analysis but rather a distillation and summary of her analysis of the personnel records of all those who were chosen instead of her.4 As is well recognized, either a disparate impact or disparate treatment analysis may be applied to any given case. Teamsters v. United States, 431 U.S. 324, 336 n.15 (1977). This _________ _____________ case seems to us, as it did to the district court, more suited to disparate treatment analysis, where the plaintiff must make out a prima facie case of discrimination, the employer must then come ____________________ 4 Plaintiff's testimony on her methodology was the following: Q So you did not study the general population of all the persons that were competing with you in all the positions that you requested in PREPA during the years in controversy? A No because what I did was conduct a study of the persons to whom positions were awarded not the persons who were competing, that would be another study. (Trans., Vol. IV, at 153-154.) ... Q Do you have any evidence that any of these persons that are born outside Puerto Rico or that are not U.S. citizens were discriminated against by PREPA? A On that list there is only, as far as I know I am the only one that has been discriminated against as to the others I don't know. (Trans., Vol. IV, at 159.) -5- forward with some non-discriminatory justification, and the plaintiff finally is given the opportunity to convince the trier of fact that the justification was pretextual and that the real reason was discriminatory. Texas Dep't of Community Affairs v. _________________________________ Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas Corp. v. _______ ________________________ Green, 411 U.S. 792, 802-05 (1973). This being the case, the _____ sophisticated statistical comparisons between the impact on a victim class and that on non-victim class eligibles in the relevant labor pool, as required by Wards Cove, are unnecessary. __________ In reviewing the district court's rulings in this genre of case, we give plenary review to its conclusion as to whether plaintiff has made out a prima facie case and "clearly erroneous" review to any ultimate finding of discriminatory intent. EEOC v. ____ Metal Service Co., 892 F.2d 341, 345 (3rd Cir. 1990). We __________________ conclude that the district court correctly identified and executed the three-pronged inquiry required. The court first found present the elements constituting a prima facie case. Plaintiff's status as a person of Dominican Republic origin was clear.5 That she was qualified was well established. That she repeatedly was rejected and those of U.S. origin promoted also was not disputed. The court, referring to plaintiff's 77 rejections, to the status of the other six CPA's, ____________________ 5 Although PREPA claimed in its brief that there was no evidence that the supervisors making the decisions on plaintiff's applications knew she was a Dominican national, counsel for appellee represented without contradiction at oral argument that such knowledge was never at issue and that, in any event, plaintiff's personnel record and the records of others were in evidence and clearly showed the employees' places of birth. -6- and to plaintiff's final rejection as Supervisor of Consumer Affairs in favor of someone with less job experience and education, found the prima facie case of intentional discrimination established. At the conclusion of plaintiff's case, the court denied PREPA's motion to dismiss. The court then turned to PREPA's proffered business reasons for rejecting plaintiff. It earlier had recognized that the employer's burden was "not one of persuasion but of production of a legitimate reason" and that, as to plaintiff's ultimate burden to prove pretext and the more likely motivation of a discriminatory reason, "the issue is one of credibility that the trier of fact will determine." PREPA advances the argument that "defendant established legitimate business reasons for not awarding the management positions to plaintiff. The plaintiffs did not rebut such proof showing that those reasons were a pretext." In arguing in this manner, PREPA completely misses the point that this was a bench trial and that the district court was not merely passing on the facial adequacy of the employer's justification but had to make credibility judgments and pass on the genuineness of PREPA's reasons and on the presence or absence of a discriminatory motive. As the Supreme Court has said in U.S. Postal Serv. Bd. of _________________________ Governors v. Aikens, 460 U.S. 711, 714-15 (1983) (footnote _________ ______ omitted), But when the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's -7- rejection, the factfinder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the McDonnell-Burdine _________________ presumption "drops from the case," 450 U.S., at 255, n. 10, and "the factual inquiry proceeds to a new level of specificity." Id., at 255. __ . . . The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff." Burdine, supra, _______ _____ at 253. The district court proceeded to identify each reason advanced by the employer, subjected it to critical analysis, and then evaluated their cumulative weight. It first noted PREPA's initial position that, among the 77 positions applied for by plaintiff, there were eight for which she was unqualified. But it observed that there was no such claim as to the remaining 69 positions. Then the court noted PREPA's argument that she was turned down for the position of Supervisor of Consumer Services in Training because, as Clerk of Consumer Services in Training, she was already performing the tasks required of a supervisor. As to this, it commented, not unfairly we think, that the argument was "disingenuous." Opinion at 14. Another PREPA justification was that the limited availability of managerial jobs meant that there was inevitable underutilization of certain employees. This did not impress the court as a suitable explanation for the uninterrupted series of rejections of plaintiff in favor of less qualified employees. Another of PREPA's positions was that managerial positions were awarded to employees with experience in the job. The court reasoned: -8- The record does not bear this assertion. Rather, the record discloses a practice of grooming individuals by placing them temporarily in the position they were ultimately selected for as a means of facially satisfying the experience requirement. Opinion at 16. Still another PREPA witness's reason for not acting favorably on one of plaintiff's applications, not specifically cited by the court, was that her acquisition of a CPA license indicated that she soon would seek greener pastures elsewhere. This conclusion, remarkable when applied to one who for 17 years had made every attempt to improve her position within the agency and laboriously had qualified in a discipline relevant to the agency's accounting and auditing functions, was based on one experience with a supervisor who, on receiving a law degree, had left to practice law. Two other factors are relevant to the issues of pretext and intentional discrimination. One is the established fact that all ___ of plaintiff's performance review evaluations had been above average and that in 17 years there had been no reprimands. In other words, the court on this record could exclude the possibility that either quality of performance or personality defects legitimately could have played a part in PREPA's decisions. The fact that many supervisors joined in these recommendations over time, under these circumstances, could have been looked upon as corroborative of some hidden, unannounced practice. Cf. EEOC v. Metal Service Co., 892 F.2d at 350. ___ ____ _________________ -9- The second factor is that, although PREPA's Affirmative Action Plan requires a statement of reasons to be made a part of an employee's personnel file when such employee is rejected for promotion, no such statement ever was made. We would have expected that at some point in this attenuated history of frustration some supervisors would have noted the bases for their adverse decisions. This seems to be an example of the type of case where "courts continue to express distrust, even in white- collar jobs, for selection criteria that are unstructured and where the overwhelming number of selectors or testers are white or male [i.e., putative discriminators]." B. Schlei & P. Grossman, Employment Discrimination Law 25 (2d ed. 1983) (1987-89 _____________________________ Supp.) The district court's ultimate finding was that from the facts and the inferences drawn from PREPA's "silence and/or fanciful explanations is that failure to select [plaintiff] for 77 managerial positions responds [sic] to a pattern of intentional discrimination on the basis of her nationality." Opinion at 16-17. We conclude, based on all the factors we have cited, that this judgment was not clearly erroneous, indeed, far from it. In so concluding, we note that even if the employer has met its burden of articulating a nondiscriminatory business reason, the trier of fact may consider the prima facie case plus the cross examination of defendant and arrive at a supportable determination of discrimination. Burdine, 450 U.S. at 255 n.10. _______ -10- Our own jurisprudence makes it clear that there is no absolute rule as to the necessary composition of sufficient evidence of discrimination and that we look to the evidence as a whole. Goldman v. First Nat'l Bank of Boston, No. 92-1773, slip op. at 8 _______ __________________________ (1st Cir. Feb. 18, 1993); Lawrence v. Northrop Corp., 980 F.2d ________ _______________ 66, 69-70 n.1 (1st Cir. 1992); Connell v. Bank of Boston, 924 _______ _______________ F.2d 1169, 1172 n.3 (1st Cir. 1991). More particularly, depending on the facts, the making of a prima facie case together with evidence of pretext may raise an inference of discrimination. There is no absolute rule that a plaintiff must adduce additional evidence. Samuels v. Raytheon Corp., 934 F.2d _______ ______________ 388, 392 (1st Cir. 1991); Villanueva v. Wellesley College, 930 __________ __________________ F.2d 124, 128 (1st Cir. 1991).6 The instant case fits this prescription. Not only is there plaintiff's history of repeated failed efforts rivaling those of Sisyphus, but the variety of reasons offered by defendant do not withstand scrutiny and have nothing to do with competence, character, or personality. Nor was there any contemporaneous explanation of the rejections. We cannot fault the district court for finding a pattern of intentional discrimination. We have not overlooked PREPA's claims that the court erred in excluding certain evidence and in allowing plaintiff to reopen ____________________ 6 Although a panel in one earlier case took the position that additional evidence of discrimination must be forthcoming, see Olivera v. Nestle Puerto Rico, Inc., 922 F.2d 43, 48 (1st ___ _______ _________________________ Cir. 1990), a majority of that panel since has taken the position articulated in Connell and Villanueva, which we believe now _______ __________ represents the law of the circuit. -11- her direct examination. We have reviewed these rulings in the context of the entire trial and do not find reversible error. Affirmed. ________ -12-